U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED LAFAYETTE

JUN 18 2014

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE, LOUISIANA

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Progressive Waste Solutions of LA, Inc.          Civil Action No. 6:12-00851

Versus                                            Judge Richard T. Haik, Sr.

Lafayette Consolidated Government                 Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a 12(b)(6) Motion On Behalf Of The Recycling Foundation, Inc. ("TRF") [Rec. Doc. 77], and an Opposition filed by Lafayette City-Parish Consolidated Government ("LCG") [Rec. Doc. 83]. Oral argument is not necessary. For the following reasons, TRF's motion will be granted.

### I. Background

Waste Facilities of Lafayette, LLC ("Waste Facilities") owned a parcel of land at 340 Sunbeam Lane Lafayette, Louisiana, and on June 7, 2011, agreed to lease the property to Progressive Waste Solutions of LA, Inc. ("Progressive")[1] "for the sole purpose of operating a multipurpose non-processing waste transfer station and hauling facility." *R. 1, at pp. 2, 6*. Subsequently, in August of 2011, Progressive purchased TRF. *R. 77, at p. 4*.

Waste Facilities obtained building permits from Lafayette Consolidated Government Planning, Zoning, & Codes Department and began construction on the waste transfer station at 340 Sunbeam Lane. *R. 1, at p. 3*. Progressive alleged they contributed

---

[1] Progressive previously went by the name IESI LA Corporation. *R. 1, at p. 6*.

a substantial sum of money toward the waste transfer station. *R. 1, at p. 3.* Subsequently, LCG introduced ordinance number O-263-2001 which revoked Waste Facilities building permit. *R. 1, at p. 3.* Before passing the ordinance, LCG received advice from the City-Parish Attorney and held a meeting and a vote on the ordinance. *R. 9, at p. 4.* On October 29, 2011, after a unanimous vote for passage, the ordinance became law. *R. 1, at pp. 5-6.*

Unable to continue with the construction of the waste transfer station, Waste Facilities and Progressive sued LCG. *R. 1.* LCG is now claiming TRF must indemnify LCG for the losses associated with those claims pursuant to a contract TRF entered into with LCG in 1994. *R. 59.* The contract provides in relevant part:

> Contractor agrees to protect, indemnify, defend and hold harmless the Owner (City), its officers, employees, representatives and/or agents, from any and all loss, claims, liability, penalty fine forfeit, demand, cause of action, suit cross claim, third party action, judgment and/or all costs and expenses incidental thereto (including costs of investigation, settlement and reasonable attorney's fees arising out of or in any way connected to this Contract and the activities of Contractor under this Contract, including any such loss, claim, liability, penalty, fine, forfeit, demand, cause of action, suit, cross claim, third party action and/or judgment resulting from the negligence or concurrent negligence of the City, its officers, employees, representatives and agents, unless such negligence is the result of or arises out of acts of omissions in no way connected with or related to this Contract or operation under this Contract or decisions or the absence of decisions involving this Contract or the granting of this Contract.

*R. 59, at p. 4.*

In the third party complaint, LCG is sparse on the details of the TRF contract:

> In 1994, a contract was entered into between the City of Lafayette and The Recycling Foundation, Inc. granting The

2

     Recycling Foundation, Inc. an exclusive contract for residential recycling in the City of Lafayette.

*R. 59, at p. 3.*

LCG asserts the claims by Progressive are at least in some way connected to the TRF's recycling activities or the contract with TRF "because the proposed facility was specifically going to be used to transfer garbage gathered by The Recycling Foundation, Inc. from residential locations in the City of Lafayette, pursuant to the aforementioned contract." *R. 59, at p. 5.* TRF contends LCG's complaint fails to state a claim for relief, and must be dismissed pursuant to FED.R.CIV.P. 12(b)(6). *R. 77.*

## *II. Standard*

Under Federal Rule of Civil Procedure 12(d), when determining a motion to dismiss pursuant to 12(b)(6), the Court must not consider "matters outside the pleadings." FED.R.CIV.P. 12(b)(6). To survive a 12(b)(6) motion to dismiss, the pleadings must show more than labels and conclusions or mere recitations of the elements of the cause of action. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, the claim must be "plausible on its face." *Id.* at 570. The "no set of facts" language from *Conley* is no longer the pleading standard in federal court. *Id.* at 563 ("The phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard: once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint."). In *Twombly* the United States Supreme Court established a two-pronged approach to analyzing a 12(b)(6) motion, which they expounded upon in *Iqbal*. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The first step is to disregard all conclusory allegations – legal and factual. *Id.* at

678-79 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). Next, the court must determine if the remaining well-pleaded, non-conclusory factual allegations give rise to a plausible claim for relief. *Id.* at 679. Pleading facts that are merely consistent with liability on the defendant's part is not enough. *Id.* at 678. The alleged facts must nudge the complaint "across the line from conceivable to plausible." *Id.* at 680. Nor will a bare assertion that discovery will reveal the necessary facts be sufficient to defeat a motion to dismiss. *Id.* at 678-79 ("Rule 8... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."). A well-pleaded complaint – one that defeats a 12(b)(6) motion – must be plausible on its face. *Id.* at 678.

### III. Analysis

TRF contractually agreed to indemnify LCG for "negligence or concurrent negligence of [LCG]" but only for acts "arising out of or in any way connected to this Contract and the activities of [TRF] under this Contract." *R. 59, at p. 4.* The aforementioned contract granted TRF "an exclusive contract for residential recycling in the City of Lafayette." *R. 59, at p. 3.*

LCG claims the losses associated with their lawsuit with Progressive, which was a the result of LCG revoking a building permit issued to Waste Facilities, should be covered by TRF pursuant to the indemnity provision in the TRF-LCG contract. *R. 1; 59.* To defeat the 12(b)(6) motion to dismiss, LCG's complaint must allege facts that make it plausible that their revocation of Waste Facilities' building permit was a negligent act

and is in some way connected to TRF contractually agreeing to be the exclusive provider of residential recycling services in the City of Lafayette. *Iqbal*, 556 U.S. at 678; *R. 59, at pp. 3-4*.

LGS alleges the connection is TRF would have used the proposed waste transfer facility to transfer garbage from residences in Lafayette, had LCG not revoked the building permit. *R. 59, at p. 5*. TRF's contract, based on what is alleged, made TRF the exclusive residential recycling service in Lafayette. *R. 59, at p. 3*. Those two allegations are not enough to move the claim that TRF must indemnify LCG "across the line from conceivable to plausible." *Id.* at 680. LCG revoked Waste Facilities' building permit. *R. 1, at p. 3*. Progressive sued alleging they had contributed a substantial sum of money toward building the waste transfer station. *R 1, at p. 3*. Neither of those events have anything to do with TRF being the exclusive provider of residential recycling services in Lafayette. TRF's status as the exclusive provider of residential recycling in Lafayette was not affected by the issuance of the building permit or the revocation of the permit. With or without the proposed transfer facility, TRF was still the exclusive provider. This is true despite the fact that Progressive is the parent company of TRF, because TRF's contract to be the exclusive recycling provider was not implicated or affected by Progressive's lawsuit with LCG.

In any event, assuming, arguendo, that the claims and contract are in some way connected, the acts by LCG giving rise to the claim were intentional, not negligent, and thus were not covered by the indemnity agreement. TRF agreed to indemnify LCG for claims resulting from their negligence. *R. 59*. Revoking the Waste Facilities permit was

intentional, not negligent. LCG proposed the ordinance that would revoke the permit. *R. 9, at p. 4*.[2] LCG was advised by their attorney concerning the ordinance. *Id.* LCG held a meeting and listened to testimony about the ordinance. *Id.* LCG unanimously voted to pass the ordinance. *Id., R. 59,* ¶ *5*. None of those acts could be construed as negligent. They are clearly and unequivocally intentional acts. As explained by the Fifth Circuit in *Keating v. Shell Chemical Co.*, 610 F.2d 328, 332 (5th Cir. 1980), "the distinction between intent and negligence obviously is a matter of degree. Apparently the line has been drawn by the courts at the point where the known danger ceases to be only a foreseeable risk which a reasonable man should avoid, and becomes a substantial certainty." Thus, the act giving rise to the claim – LCG revoking Waste Facilities' building permit – is not covered by the indemnity agreement. Accordingly, the Court will grant The Recycling Foundation's, 12(b)(6) Motion.

*[signature]*
Richard T. Haik, Sr.
United States District Judge

---

[2] Fed.R.Civ.P. 7(a) limits "pleadings" to a complaint, an answer to a complaint, an answer to a counterclaim designated as a counterclaim, an answer to a crossclaim, a third-party complaint, an answer to a third-party complaint, and a reply to an answer, if the court orders one.