U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED   LAFAYETTE

'JAN 1 ½ 2015

TONY R. MOORE, CLERK
WESTERN DISTRICT OF LOUISIANA

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE  DIVISION

Progressive Waste Solutions of La, Inc.                    Civil Action No. 12-00851

versus                                                                  Judge Richard T. Haik, Sr.

Lafayette Consolidated Government              Magistrate Judge C. Michael Hill

## MEMORANDUM RULING

Before the Court is a Motion For Partial Summary Judgment filed by plaintiff, Progressive Waste Solutions of La, Inc. ("Progressive") [Rec. Doc. 109], an Opposition Memorandum filed by defendant, Lafayette Consolidated Government ("LCG"), [Rec. Doc. 131] and Progressive's Reply thereto [Rec. Doc. 139].  Also, before the Court is a Motion To Dismiss Pursuant to Federal Rule Of Civil Procedure 12(b) And Alternative Motion For Summary Judgment filed by  LCG [Rec. Doc. 116], an Opposition Memorandum filed by Progressive [Rec. Doc. 135] and LCG's Reply thereto [Rec. Doc. 145].  For the reasons that follow, the Court will deny Progressive's Motion For Summary Judgment and grant LCG's Motion To Dismiss and Alternative Motion For Summary Judgment.

## *Background*

On June 7, 2011, Progressive entered into a Lease Agreement with Option to Purchase ("Lease") with Waste Facilities of Lafayette, LLC ("Waste Facilities"), wherein Waste Facilities agreed to lease a 16.382 acre parcel of land located at 340 Sunbeam Lane, Lafayette, Louisiana[1] to Progressive and build an approximately 20,875 square foot building which was to be constructed "by and at the sole cost and expense of [Waste Facilities] in accordance with the plans and specifications drawn by Allstates Building Systems ("Allstates") for the purposes of  a dual transfer station and hauling facility...." *R. 109-4,*

---

[1]  The record indicates that the Sunbeam Lane property was not purchased by Waste Facilities until July 6, 2011, 29 days after Progressive signed the Lease Agreement. *R. 145, Exh. B.*

*Lease*. The "Effective Date" of the Lease was the date of signing—June 7, 2011.  Upon signing, the Lease required that Progressive pay to Waste Facilities the first full month's rent of $25,000.00.[2]    The Lease contemplated a ten year term, which was to begin on the "Commencement Date."  The Commencement Date of the Lease was defined  as "the fifth (5th) day following [Progressive's] receipt of a final Certificate of Occupancy for the building from the Parish of Lafayette, Louisiana. *Id.*

Following the LCG's Planning, Zoning & Codes Department's review, on September 19, 2011, Waste Facilities obtained Building Permit No. 2011-1604 from LCG under "the Good Neighbor Ordinance" and Waste Facilities' builder began construction on the waste transfer station.  Subsequently, on October 18, 2011, the Lafayette City-Parish Council voted unanimously to approve Ordinance No. O-263-2001 (the "Ordinance"), "to protect the health, welfare, and safety of its citizens."  The Ordinance prohibited the "establishment or siting of any new waste transfer station within the Parish of Lafayette...." and directed the City-Parish President to "withdraw and revoke any and all permits for any waste transfer stations permitted but not yet in operation on the effective date of the ordinance." *Ordinance O-263-2001, R. 116, Exh., C.*  The Ordinance became law on October 29, 2011.  Waste Facilities' building permit was revoked on October 31, 2011.

*Summary Judgment Standard*

Summary judgment is appropriate if "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been

_____

[2] LCG represents that recent discovery responses from Progressive state Waste Facilities refunded the $25,000 deposit to Progressive on November 1, 2012. *R. 145, Exh. D.*

met, the non-moving party must then come forward and establish the specific material facts

in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 588 (1986).

*Motion To Dismiss Standard*

In considering a Rule 12(b)(1) motion to dismiss for lack of subject matter

jurisdiction, "a court may evaluate (1) the complaint alone, (2) the complaint supplemented

by undisputed facts evidenced in the record, or (3) the complaint supplemented by undisputed

facts plus the court's resolution of disputed facts." *Den Norske Stats Oljeselskap As v.*

*HeereMac Vof*, 241 F.3d 420, 424 (5th Cir.2001). Thus, unlike a Rule 12(b) (6) motion to

dismiss for failure to state a claim, the district court is entitled to consider disputed facts as

well as undisputed facts in the record and make findings of fact related to the jurisdictional

issue.[3] *Clark v. Tarrant Cnty.*, 798 F.2d 736, 741 (5th Cir.1986).  All factual allegations of

the complaint, however, must be accepted as true. *Den Norske Stats Oljeselskap As*, 241

F.3d at 424.

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss an action for

"failure to state a claim upon which relief can be granted." In evaluating a Rule 12(b)(6)

motion, the Court must accept as true the well-pleaded facts in the plaintiff's complaint, and

must construe the facts in a light most favorable to the plaintiff. *Arias–Benn v. State Farm*

*Fire & Cas. Ins. Co.*, 495 F.3d 228, 230 (5th Cir.2007). However, the Court need not "

'accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.'

" *Id.* (quoting *Plotkin v. IP Axess Inc.,* 407 F.3d 690, 696 (5th Cir.2005)).  To survive a Rule

---

[3] LCG has attached four exhibits to its motion: 1) the Lease Agreement between Waste Facilities and Progressive; 2) the Building Permit issued by LCG on September 19, 2011; 3) the LCG Ordinance No. O-263-2001 which revoked Waste Facilities' Building Permit; and, 4) an October 17, 2011 Contract Change Order to the Waste Facilities' contract approved by Progressive. *R. 116, Exhs. A-D.*

3

12(b)(6) motion, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

*Analysis*

Progressive claims that its June 8, 2011 Lease Agreement with Waste Facilities gave it status as a "lessee" in this Court and therefore asserts a takings claim based upon the revocation of the building permit issued to Waste Facilities. LCG argues that Progressive's taking claim is not ripe as it has failed to exhaust all state law remedies, and alternatively that Progressive does not have a legally protectable property interest to assert a takings claim. In addition to addressing the takings claim, LCG asserts that Progressive's substantive due process and equal protection claims must fail and that Progressive has failed to state a cause of action as to its State law claims for intentional interference with a contract and detrimental reliance. The Court will initially address whether or not Progressive's taking claim is ripe.

## 1.  *Ripeness of the Federal Takings Claim*

Article 1, Section 4 of the Louisiana Constitution states in pertinent part: "Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation."  The Louisiana Supreme Court has recognized that property includes not only physical objects, but the rights that persons have which flow through the physical objects, such as ownership, servitudes, and leases.  Those property rights can be taken or damaged without physical invasion.  *State of Louisiana, Through the Department of Transportation and Development v. Chambers Investment Company, Inc.*, 595 So.2d 598 (La.1992).  Article 1, § 4, of the Louisiana Constitution further requires that the owner of property, or property rights, be fully compensated for the taking or damaging of those rights.  *Id.* at 602–603.

4

Ripeness is a element of subject matter jurisdiction, as a court has no power to decide disputes that are not yet justiciable. *See Sample v. Morrison*, 406 F.3d 310, 312 (5th Cir.2005). A takings claim is generally not ripe for review until the claimant has sought and been denied just compensation through the appropriate  state procedures. *See Williamson Cnty. Reg'l Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Progressive acknowledges that its takings claim is not ripe under the traditional analysis but contends that its claims fall under an exception to this rule.  Progressive states that while it filed an inverse condemnation action in state court under Louisiana law on October 18, 2014,[4] "out of an abundance of caution."  Progressive argues that it is not required to go through condemnation proceedings if such action would be futile or inadequate. *See Liberty Mut. Ins. Co. v. La. Dep't of Ins.*, 62 F.3d 115, 117 (5th Cir.1995).  In particular, it argues that because LCG has refused to acknowledge Progressive's status as a property rights holder, any procedure for inverse condemnation would be "inadequate and futile."  In support of its position, Progressive notes that despite the fact that Waste Facilities failed to file an inverse condemnation action, LCG entered into a settlement agreement with Waste Facilities. Progressive's reasoning fails to meet its burden of showing that it is "certain that the state would deny [it] compensation were it to undertake the obviously futile act of seeking it."[5] *Steward v. City of New Orleans,*  537 Fed.Appx. 552, 555 (5th Cir.2013)(citing *Samaad v. City of Dall.*, 940 F.2d 925, 934 (5th Cir.1991)).  Progressive's takings claim is therefore unripe for adjudication and must be dismissed without prejudice.  Moreover, pursuant to the court's holding in *Steward,* as all of Progressive's claims are based on LCG's revocation of

---

[4]   *Docket Number 2014-5374, Div. L, Lafayette Parish, Louisiana.*

[5]   Under *Standard Materials, Inc. v. City of Slidell*, 700 So.2d 975 (La.App. 1 Cir., 1997), "in order to rely on the [futile] exception, an applicant must make a showing which demonstrates a pattern of prior administrative denials and official position hostile to the applicant's interest by the regulatory agency. *Id.* at 982 n. 7.

the building permit issued to Waste Facilities, which it alleges is a takings without just compensation, they are not sufficiently independent of the takings claim and must also be dismissed as unripe. *Id.* at 556.

Even assuming *arguendo* that Progressive's takings claim is ripe under the "futility exception," the Court finds that Progressive has failed to meet its burden of proving that its status as a putative or "would be" lessee entitles it to a vested right in order to pursue a takings claim or any claims related thereto. The Court will therefore consider the entirety of Progressive's claims as follows.

### 2. Progressive's Takings Claim

The stated purpose of the Lease at issue was for Waste Facilities to build a facility to be used by Progressive in its solid waste hauling and disposal business for "a dual transfer station and hauling facility." *R. 109-4.* Thus, the express language of the Lease Agreement between Waste Facilities and Progressive unambiguously contained a suspensive condition that the Lease would not commence until Waste Facilities obtained a final Certificate of Occupancy for the facility.[6] On September 19, 2011, LCG issued a Building Permit to Waste Facilities to begin construction of the facility. The parties do not dispute that at that time, Waste Facilities, the property owner who was constructing the facility, acquired a vested property right to the building permit. *Palermo Land Co. v. Planning Comm'n of Calcasieu Parish*, 561 So.2d 482, 486-88 (La. 1990). The issue before the Court is whether or not Progressive also acquired a vested property right as a lessee when the permit was issued to Waste Facilities on September 19, 2011 eventhough the Lease had not yet commenced.

---

[6] Pursuant to Louisiana Civil Code Article 1767, ""[a] conditional obligation is one dependent on an uncertain event. If the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." The right to enforce the obligation does not arise until the fulfillment of the suspensive condition, and the obligation may not be enforced until the condition is met. *Jazz Enterprises, Inc. v. Live Music Establishment, LLC*, 2007 WL 439067, 3 (La.App. 1 Cir.,2007).

Progressive contends that, as a lessee, it has status under Louisiana law to receive just compensation for LCG's taking of the leased property. Because Ordinance No. O-262-2001 revoked Waste Facilities' building permit for the transfer facility issued under the Good Neighbor Ordinance, Progressive contends that it has a vested right in the building permit which it relied on "when it continued its lease agreement with [Waste Facilities], embarking on its planned operation of Sunbeam Lane and negating efforts to locate in any other locale for this region." *R. 109-1, p. 15.*

Progressive relies upon *State Dept. of Transp. & Dev. v. Exxon Corp.*, 430 So.2d 1191 (La.App. 1st Cir.1983) and *State Dept. of Transp. & Dev. v. Jacob*, 483 So.2d 592 (La. 1986), in support of its position that the law recognizes a lessee's right to receive just compensation for the taking of leased property. In *Exxon*, the court held that the 5 year lessee of a service station owned by Exxon was entitled to recover compensation for business losses resulting from expropriation of the premises for highway construction. *Exxon,* 430 So.2d at 1192. The court stated, "[t]he right to use property for business pursuits in hope of generating a profit is clearly one of the rights which flows from property ownership. When this right is separated from the actual ownership of the property as in the instant case by lease, the lessee becomes an owner of a private property right and is entitled to protection from having the property taken without compensation just as the owner of property in full ownership has this right." *Id.* at 1195. In *Jacob*, the owner of a restaurant in operation for fifty years entered into an unrecorded lease with a lessee two years before the State filed an expropriation proceeding for highway purposes against the owner. The lessee was allowed to intervene after expropriation and assert a claim for the damages it sustained. The court held that in expropriation suits, an unrecorded lessee has a compensable property interest when the property he leases is expropriated by the state. *Jacob*, 483 So.2d at 465.

Progressive cites *Dunn v. Parish of Jefferson,* 256 So.2d 664 (La.App. 4 Cir. 1/10/72)

7

and *St. Raymond v. City of New Orleans*, 769 So.2d 562, 565 (La.App. 4 Cir. 5/17/00) in support of its position that, as a lessee, it has a property right to the validly issued building permit—just as Waste Facilities has that right. In *Dunn*, the plaintiff set up a house trailer on a lot she owned under a permit issued to her by the Parish Council. Soon thereafter, the Parish Council "changed its mind" and revoked the permit. Finding that the plaintiff expended "considerable efforts and incurred relatively substantial expenses... in good faith reliance on the permit," the court held that plaintiff had acquired a vested right to the permit.

*St. Raymond v. City of New Orleans,* 769 So.2d 562  (La.App. 4 Cir.,2000) involved a fact intensive situation in which the plaintiff was initially issued a building permit based on construction plans. When the permits department discovered it had "missed the five foot balcony" on the building, it required the plaintiff to apply for a variance—which was denied. *Id.* at 901. The court noted that the vested rights doctrine "applies by its own terms only to arbitrary revocation of a *valid* building permit." *Id.* at 907 (emphasis added). Because the plaintiff's permit violated the city's zoning law, he did not have a vested right in the permit and its issuance was not arbitrary and capricious.[7] *Id.*

LCG argues that Progressive lacks standing as well as the substantive right to seek damages from LCG on its Takings claim. LCG does not dispute that the September 19, 2011 building permit was validly issued to Waste Facilities. LCG argues, however, that because Waste Facilities was the owner of the property and the only party who expended substantial money to begin construction in reliance on the permit, LCG has properly settled Waste Facilities' claim and Progressive has no such claim. LCG contends that "Progressive has

---

[7] The Court notes that the holding in *St. Raymond*, conflicts with Progressive's reliance on *Cuccia v. Board of Zoning Adjustments of/and Parish of Jefferson,* 966 So.2d 611 (La.App. 5 Cir.,2007) for the proposition that "[e]ven when a building permit has been improperly issued, 'fairness and our jurisprudence confirms that when [a property right holder] relies in good faith and to his detriment on a building permit issued...and incurs expense as a result, he has a vested right." *R. 109-1, p. 15.*

cited no authority for the proposition that a "would be lessee" who has never taken possession of the property, who was not issued a building permit, who has not expended money on construction in reliance on a building permit, and where the facility to be leased did not even exist, has a vested property interest in a building permit for a contemplated facility." *R. 131, p.3.*

The Court agrees that the cases relied on by Progressive are distinguishable from this case and fail to support Progressive's claim to a vested right in the property interests and/or the permit. Rather, they address claims by the lessor and/or lessee who was the actual permit holder and expended money for construction in good faith reliance on the valid building permit issued to them. Here, the permit was issued to Waste Facilities, not Progressive. Waste Facilities was the property owner and solely responsible for the construction of the facility. *See Sanchez v. County of El Paso, Tex.*, 486 Fed.Appx. 455, 456 (5th Cir. 2012) (bailbondsman of a surety company whose license was revoked had no property interest of his own that could be impaired.).

Moreover, while Waste Facilities and Progressive entered into a Lease Agreement on June 7, 2011, the parties clearly contemplated a suspensive condition would be fulfilled prior to the existence of a binding contract for lease—that is, an Occupational License must be issued after the building was completed. Louisiana law recognizes the distinction between a "contract of lease," versus a "contracts to lease." A contract of lease requires that "the thing, the price, and *the consent*" are present. *Davis v. Meagher Oil and Gas Properties, Inc.*, 2010 WL 819403, 3 (W.D.La.,2010) (citing *Acadiana Bank v. Foreman*, 352 So.2d 674, 678 (La.1977)). A contract to lease is defined as "[a] contract to enter into a lease at a future time is enforceable by either party if there was agreement as to the thing to be leased and the rent, unless the parties understood that the contract would not be binding until reduced to writing or until its other terms were agreed upon." La. Civ.Code art. 2670. Hence, the June

7, 2011 Lease Agreement was a "contract to lease." A "contract of lease," binding the parties to the Lease Agreement never occurred because the suspensive condition that an Occupancy License would be issued had not been fulfilled making the Lease "void *ab initio.*" *See Lake Forest Management, LLC v. HealthMark Partners, Inc.,* 2004 WL 1794555, 6 -8 (E.D.La.,2004) (J. Fallow); *see also Landry's Seafood House-New Orleans, Inc. v. Board of Com'rs of Orleans Levee Dist.*, 56 So.3d 380, 390-391(La.App. 4 Cir.,2010).

Finally, Progressive has provided no evidence of actual expenses incurred in reliance on the permit being issued. In its motion, Progressive states its damages include "embarking on its planned operation of Sunbeam Lane and negating efforts to locate in any other locale for this region" and the resulting lost revenues, increased operating costs, loss of identified waste transfer station revenues and additional building costs. *R. 109.* Progressive also claims as expenses "two significant and costly change orders made regarding the construction project." Progressive, however, was not responsible for the cost of the first change order and concedes that the second change order never occurred. *Id.*

Even if the Court construed Progressive's status as a putative lessee to entitled it to a Takings claim, the record is devoid of any evidence that Progressive expended substantial money in reliance on the permit. The affidavit of its Vice President and Regional Manager, Phillip Smith, states that after the permit was withdrawn, Progressive purchased property and a waste station in Acadia Parish "after significant time and expense" and at a cost that was "significantly higher than the original project on Sunbeam Lane due to the significant improvements to the infrastructure and the increased cost of construction." Smith, however, provides no invoices or amounts what-so-ever, estimated or otherwise. Nor does he distinguish the fact that Progressive was planning to lease the building and property on Sunbeam Lane from Waste Facilities versus the fact that the Acadian Parish facility was purchased and is owned by Progressive. As Progressive does not provide any specific

**10**

information or evidence as to actual expenditures or losses, Smith's self-serving conclusory statements in his affidavit are too speculative to satisfy Progressive's burden of proving that it incurred significant expenses in reliance on the permit.

### 3. *Substantive Due Process Claim*

To establish either a substantive due process violation by claiming denial of a property right, plaintiff must first establish denial of a constitutionally protected property right. *Bryan v. City of Madison*, 213 F.3d 267, 274–75 (5th Cir.2000). LCG contends that Progressive never had a constitutionally protected property interest right, because the building permit it challenges was issued to Waste Facilities.

The Supreme Court has long recognized that the Due Process Clause is more than a guarantee of procedural fairness and "cover[s] a substantive sphere as well, 'barring certain government actions regardless of the fairness of the procedures used to implement them.'" *County of Sacramento v. Lewis*, 523 U.S. 833, 840 (1998). The reach of substantive due process is limited, however, and it protects against only the most serious of governmental wrongs. *Breen v. Texas A & M University*, 485 F.3d 325, 332 (5th Cir.2007)

Substantive due process claims involving property rights are not sustainable if there exists "any conceivable rational basis" for the challenged legislative decision. *FM Properties Operating Co. v. City of Austin*, 93 F.3d 167, 174 (5th Cir.1996). In other words, governmental action implicating a protected property right comports with substantive due process if the action is rationally related to any conceivable legitimate government objective. *Id.*; *Energy Management Corp. v. City of Shreveport*, 467 F.3d 471, 481 (5th Cir.2006). "[T]he 'true' purpose of the [action], (i.e., the actual purpose that may have motivated its proponents, assuming this can be known) is irrelevant for rational basis analysis." *FM Properties*, 93 F.3d at 174. "The question is only whether a rational relationship exists between the [government action] and a conceivable legitimate objective." *Id*. "If the

11

question is at least debatable there is no substantive due process violation." *Id.* Moreover, only if government action is "clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," may it be declared unconstitutional. *Id.* at 174–175 (quoting *Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926).

In *FM Properties*, the court noted "[t]he power to decide, to be wrong as well as right on contestable issues, is both a privilege and curse of democracy." *FM Properties*, 93 F.3d at 174. "Ergo, 'the due process clause does not require a state [or City in this case] to implement its own law correctly[, nor does] [t]he Constitution ... insist that a local government be right.' " *Id.* "Indeed, '[c]onverting alleged violations of state law into federal ... due process claims improperly bootstraps state law into the Constitution.' " *Id.*

Here, Progressive contends that the Ordinance is arbitrary, having no rational basis nor any reasonable relationship to any legitimate government interest.   In particular, Progressive states that because LCG has permitted a waste facility similar to Progressive's intended facility "only a mile from the Sunbeam Lane location," it is clear the Ordinance was "entirely singled out for the Sunbeam Lane project."

The language of the Ordinance states that its purpose is to foster "... the health, safety, morals, or general welfare." As provided by Fifth Circuit jurisprudence, LCG's conclusions as to the relationship between the stated purpose and the enactment of the ordinance, "... are cloaked with a presumption of validity ..., [and courts] give them much deference." *IFM Properties,* 93 F.3d at 175.  This deference is so substantial, that plaintiffs, "to successfully challenge this legislative judgment, 'must convince the court that the legislative facts on which the [decision] is apparently based could not reasonably be conceived to be true by the governmental decision maker.'" Progressive has failed to assert such allegations. Accordingly, Progressive's federal and state substantive due process claims will be

dismissed.

### 4. *Equal Protection Claim*

Progressive contends the enactment of the ordinance denied Progressive equal protection under the Fourteenth Amendment as guaranteed by the United States Constitution, because the ordinance allegedly treated plaintiff "differently from other similarly-situated businesses with no rational basis for the difference in treatment." *R. 1, ¶¶ 26 & 27.* "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Village of Willowbrook v. Olech,* 528 U.S. 562, 564 (2000).

To bring such an equal protection claim for the denial of a zoning permit as in this case, zoning permit case such as this, Progressive must show that the difference in treatment with others similarly situated was irrational. *Mikeska v. City of Galveston* , 451 F.3d 376, 381 (5th Cir. 2006). Progressive argues that Waste Management, a company which continues to operate a waste treatment facility approximately one mile from the Sunbeam Lane property, establishes that it has been treated differently with others similarly situated. The Court finds that Progressive's equal protection claim must fail pursuant to Fifth Circuit jurisprudence.

In *Beeler v. Rounsavall,* 328 F.3d 813, 817 (5th Cir. 2003), a store owner sued the city and its officials for violating his equal protection rights in handling his application for a liquor permit under the city's ordinances.   The ordinances at issue only applied to applications for new permits.   Rejecting the plaintiff's arguments that he was similarly situated to other stores located in adjacent buildings which sold the same basic items, the court stated,

the relevant criterion here is not the two stores' proximity or the similarity of

their products. Instead, the relevant question is whether the two stores were similarly situated under the Code. The Code's differential treatment of businesses applying for their first permit and businesses applying to renew their permits indicates that Beeler and the [other stores] were not similarly situated. Whereas Beeler was applying for a new permit, the [other stores] were applying to renew an existing permit.

*Id.*

Here, the Ordinance prohibited any new waste transfer station within Lafayette Parish and revoked any permits for waste transfer stations not in operation. Waste Management's facility had been in operation for many years while Progressive did not have a facility and was not in operation in Lafayette Parish. Hence, Progressive cannot establish that Waste Management is a similarly situated comparator under the requirements of equal protection.

As to LCG's rational basis for enacting the Ordinance, the stated purpose of the Ordinance was "to protect the health, welfare, and safety of its citizens" by prohibiting establishment of any new waste transfer facilities in Lafayette Parish. This purpose is explained by the Ordinance's citation of a 2000 study by the National Environmental Justice Advisory Council that "waste transfer stations tend to locate disproportionately in low-income areas." *R. 116-5.* "[T]he decision of a governmental body does not violate the equal protection guarantees if there is any basis for the action that bears a debatably rational relationship to a conceivable legitimate governmental end." *Reid v. Rolling Fork Public Utility Dist.*, 979 F.2d 1084, 1087 (5th Cir. 1992). The Court finds that there was a rational basis for LCG's enactment of the Ordinance.

**4. *Detrimental Reliance***

Progressive alleges it detrimentally relied upon the permit and the letter of no objection issued to Waste Facilities by LCG. Louisiana Civil Code Article 1967 defines a cause in detrimental reliance. To recover pursuant to detrimental reliance, a plaintiff must prove (1) a prior representation by conduct or word, (2) a justifiable reliance, and (3) a

detrimental change in one's position based on that reliance. *Luther v. IOM Co. LLC*, 130 So.3d 817, 825 (La. 2013). A party cannot avail himself of that doctrine if he fails to prove all essential elements of the plea. *See Wilkinson v. Wilkinson*, 323 So.2d 120, 126 (La.1975).

Here, the building permit upon which Progressive relies to establish its claim for detrimental reliance, was issued by LCG to Waste Facilities. Thus, any representations related to Progressive's claim was to Waste Facilities. Detrimental reliance is not applicable to claims involving a third party. *Denbury Onshore, L.L.C. v. Pucheu,* 6 So.3d 386, 397 (La.App. 3 Cir.,2009). Moreover, Progressive did not rely on the building permit because it entered into the Lease Agreement with Waste Facilities months before the building permit was even issued. Finally, as Progressive has not shown that it suffered damages not adequately compensated by LCG, it cannot establish reliance to its detriment. *Suire v. Lafayette City-Parish Consol. Government,* 907 So.2d 37, 59 (La.,2005).

### 5. *Intentional Tortious Interference*

Progressive maintains LCG is liable for intentional interference with Progressive's Lease Agreement with Waste Facilities. Louisiana law recognizes a cause of action for intentional interference with a contract. *See 9 to 5 Fashions, Inc. v. Spurney,* 538 So.2d 228 (La. 1989). "The action for intentional interference with contractual rights is a very narrow one, with five elements a plaintiff must prove to recover: (1) the existence of a contract or legally protected interest between the plaintiff and the corporation; (2) the corporate officer's knowledge of the contract; (3) the officer's intentional inducement or cause of the corporation to breach the contract or his intentional rendition of its performance impossible or more burdensome; (4) absence of justification on the part of the officer; and (5) causation of damages to the plaintiff by the breach of contract or difficulty of its performance brought about by the officer." *Allied North American Corp. of Texas v. Edgecomb*, 2009 WL 1717358, 7 (La.App. 1 Cir.,2009).

In *Spurney*, the Louisiana Supreme Court unequivocally confined the scope of the tort involved in a tortious interference with contract claim to situations involving officers of private corporations. The court stated: "[i]n the present case we recognize, as set forth particularly herein, only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person." *City of Alexandria v. Cleco Corp.*, 735 F.Supp.2d 448, 459 (W.D.La.,2010) (citing *Spurney*, 538 So.2d at 234). Thus, the cause of action is thus not applicable to the circumstances of this case, involving the Lafayette consolidated government. Therefore, Progressive's claim for tortious interference with contract is not viable under Louisiana law.

## 6. *General Louisiana Tort Claims*

Finally, the Court agrees that Progressive's claim under La. Civil Code Art. 2315 for general tort liability also fails. Progressive alleges LCG is liable to it for breach of an alleged "duty to Progressive to honor and abide by the validly issued building permits." *R. 57, ¶ 18.* Progressive does not cite any authority for this duty related to a building permit to which Progressive was not a party. Rather, the jurisprudence recognizes that "public officials owe a duty to the constituency that elected them, and the municipality that they serve." As LCG owed no duty to Progressive, Progressive's claims under Article 2315 must be dismissed.

### Conclusion

Based on the reasons stated in the foregoing, including the relevant jurisprudence, the Court finds that Progressive has failed to meet its burden of proof and will therefore deny its Motion For Partial Summary Judgment and will grant LCG's Motion To Dismiss Pursuant to Federal Rule Of Civil Procedure 12(b) And Alternative Motion For Summary Judgment as to all of Progressive's claims.

Richard T. Haik, Sr.
U.S. District Judge